## * PULLMAN PALACE CAR CO. v. GLOBE ROLLING MILL CO.

STATEMENT OF FACTS.

The Pullman Palace Car Co. contracted to sell to Joseph Bros. certain articles at a stipulated price per 100 pounds, but nothing was said as to the time of payment therefor. On May 25 the articles were delivered to the purchasers to be weighed, and on ascertaining the quantity, demand was made on them for payment, and it was diligently urged, but postponed by the purchasers, who without the knowledge or consent of the company, on May 28, contracted to sell the articles to the defendant in error, and delivered the same to it, and on May 31st, refused to pay the company therefor. On the 1st of June, the Car Company hearing of the sale and delivery to the Globe Rolling Mill Company, between 9 and 10 o'clock A. M. notified it of their claim to the property, and demanded possession thereof, which was refused, and the Car Company replevied the goods the same day. Sometime during the day, the exact time not being shown, the defendant in error gave to Joseph Bros. a check on the Fourth National Bank of Cincinnati for the agreed price of such articles, which was deposited in the Ohio Valley Bank before 1 P. M. of said day, and payment of which might have been

---

* This case is cited by the superior court in Pike v. Bank, 2 O. D., 3, 5.

stopped by defendants notifying the First National Bank before 4 P. M. On the trial these facts being shown, no evidence was offered by the defendant tending to show that the check had been given to Joseph Bros. before the notice of plaintiff's claim was received. Held,

1. DELIVERY OF ARTICLES TO PURCHASER TO BE WEIGHED, NOT A WAIVER OF CASH PAYMENT.

That no time for the payment for the articles having been fixed by the contract between the plaintiff and Joseph Bros., it was a sale for cash, and the delivery of the articles and the payment therefor were to be simultaneous and concurrent acts, and no title vested in Joseph Bros. until payment therefor unless this was waived by the Car Company. And the fact that the articles were delivered to Joseph Bros. to be weighed, would not of itself, operate as such waiver, and nothing was in fact done by said company which had this effect, and as between the company and Joseph Bros., on their failure or refusal to make the payment, the company could legally reclaim such property.

2. BUYER FROM POSSESSOR FOR WEIGHING, WITH NOTICE OF SELLER'S CLAIM, NOT A BONA-FIDE PURCHASER—PAYMENT BY CHECK.

If, after such delivery to Joseph Bros., for the purpose of ascertaining the weight, they had sold the property to a *bona fide* purchaser for value, who had paid for the same, or incurred liability on account thereof, such purchaser would have taken a good title thereto. But if it were shown that notice was received by the purchaser, of the claim of the Car Company before it paid therefor, it was not a *bona fide* purchaser, and occupied no better position than did Joseph Bros. And when it was shown that such notice was received before 10 o'clock A. M., and the check in payment for the articles was executed the same day the burden of showing that it was given before the notice was received, was on the defendant.

3. CHARGE TO JURY—WEIGHT OF EVIDENCE.

On this state of fact the charge of the court to the jury "that their verdict must be for the defendant, unless it appeared from the evidence that notice of plaintiff's rights and claims was given to the defendant, not only before defendant paid the Josephs for the axles, but also before the contract of purchase for the axles entered into between the defendant and Joseph Bros. had been completed by the delivery of the axles to defendant," was erroneous and prejudicial to the plaintiff. The court also erred in refusing to grant the motion for a new trial, based on the ground that the verdict was against the weight of the evidence.

ERROR to the Court of Common Pleas of Hamilton county.

SMITH, J.

The facts in this case, as they appear from the bill of exceptions, which contains all of the evidence, are substantially these:

First.—On May 20, 1887, the plaintiff company contracted to sell to Joseph Bros. a lot of old axles then in the yards of the Cincinnati Southern Railroad Company, at $1.20 per 100 pounds. There was no stipulation as to the time of payment. On the 25th of May, the company gave to Joseph Bros., at their request, an order on the railroad company to deliver to them the axles, so they might be weighed, and the amount be ascertained. They received them from the railroad company, and had them weighed, and thereupon a bill therefor was presented to Joseph Bros., probably on the 27th of May, and payment demanded by a messenger, but as Joseph Bros. claimed some small allowance for dirt on the axles, the bill was returned to the company, which consented to the deduction, and on the 28th it again returned the bill as corrected for payment. It was not then paid, the excuse being that the head of the firm was out of the city. The 29th was Sunday, and the 30th Decoration Day, and the bill was not again presented until the 31st, when the firm declined to pay at all, on the grounds, as alleged, that the car company's office, at Chicago, owed them $200 or $300, and that they had now got the company where they wanted it.

Second.—On the 28th of May, while plaintiff was trying to obtain the payment of its bill, Joseph Bros. had contracted to sell the axles to the Globe Rolling Mill Company, and delivered the same to such company on that day. On the

morning of June 1, between 9 and 10 o'clock, Mr. Matthews, the attorney for the plaintiff, by telephone, notified the defendant that the axles belonged to the plaintiff, and demanded their possession, which was refused. Sometime during the same morning, but whether before or after this notification, does not appear, the defendant gave to the collector of Joseph Bros., a check for $110, the price of the axles, on the First National Bank of this city, which was deposited in the Ohio Valley National Bank, sometime before 1 P. M. of said day, and payment of which might have been stopped by the defendant notifying the bank on which it was drawn, before 4 P. M. of said day. The goods were replevied by the plaintiff from the defendant on said 1st day of June.

On the trial of the case the court charged the jury, "that their verdict must be for the defendant, unless it appeared from the evidence that notice of plaintiff's rights and claims was given to defendant, not only before the defendants paid the Josephs for the axles but also before the contract of purchase for the axles entered into between defendant and the Joseph Bros. had been completed by delivery of the axles to defendant." This was substantially the whole charge of the court, and there was no modification thereof. As there was no claim that there had been any such notice before the delivery of the goods, it was in effect a direction to the jury to return a verdict in favor of the defendant, which was done. Was this charge right?

There being no stipulation in the contract between the plaintiff and Joseph Bros. as to the time of payment for the axles, in law it was a sale for cash, and the delivery of the goods and the payment therefor were to be simultaneous and concurrent acts. The plaintiff could allow the articles to go into the possession of the purchaser to be weighed, but unless something more than this was done to waive its right to immediate payment, this was not an absolute delivery, and no title passed (as between the parties), to the purchaser, until the price was paid, and the plaintiff had the right, on the failure to pay, to reclaim the axles from Joseph Bros., the evidence tending strongly to prove that the latter had entered into this scheme to outwit the plaintiff. See Elevator v. Bank, 23 O. S., 311; Edwards v. Glancy & Brooks, 1 Ohio Circ. Dec., 253 (s. c. 1 C. C. R., 453). Very clearly there was no such waiver on the part of the plaintiff, for it diligently sought the payment of its bill, until it found that the goods had been transferred to the defendant, when it at once replevied them.

It is true that Joseph Bros., having obtained the possession of these goods with the consent of the plaintiff, might by a sale of them to a *bona fide* purchaser (who without notice of the defect in the title of the vendor, had paid for them), give to such purchaser a good title thereto. But if the sale was made to a person who before payment therefor, or incurring liability on account of it, had notice of the claim of the real owner, he would stand in no better position than his vendor.

The question then is, was the defendant a *bona fide* purchaser, and on whom does the burden of proof rest as to this? It is to be noted in this case that while the plaintiff offers evidence showing that the defendant had notice of plaintiff's claim to those axles, between 9 and 10 in the morning of June 1st, the defendant offers no evidence tending to show that the payment was before the notice; but contents itself with proving that some time during that same morning, it gave a check to Joseph Bros., for the price of the axles, the payment of which might easily have been stopped. As this fact was peculiarly in its own knowledge, and no proof as to this was offered, the presumption is strong that the check was given after the notice was received. We think therefore, that there was sufficient evidence to show that it was not a purchaser in good faith. But independently of this, we think the law is, that in such case the burden is on the defendant to show that he was a *bona fide* purchaser in good faith, having paid for the goods or incurred liability therefor, before the notice. Benjamin on Sales, sec. 433, Note i, and cases cited.

If this be the law applicable to the case, it is evident that the charge of the court was erroneous. It was not shown that the defendant was a *bona fide* purchaser, and the instruction that the defendant was entitled to recover unless it appeared that it had notice of plaintiff's claim before the goods were delivered to it, was not the law. The judgment of the common pleas will therefore be reversed on account of such error, and the action of the court in refusing to grant a new trial on the ground that the verdict was against the evidence.

Mortimer Matthews, for plaintiff in error.

Kramer & Kramer and Mr. Wolfstein, for defendant in error.